(Williams County Court of Common Pleas.)

## THE STATE OF OHIO v. REBECCA ALTOFFOR.

Sec. one (1) of an Act of the General Assembly of Ohio, passed may 18th, 1894, vol. 91, Ohio St. 300, defines a house of ill fame; and in a criminal prosecution for keeping a house of ill fame, it will be sufficient to make out a prima facie case, if the state prove the building, charged to be so kept, is generally reputed, in the neighborhood where it is located, "to be a building or place where persons of opposite sex meet for the purpose of prostitution."

---

SNOOK, J.

The defendant, Rebecca Altofer, was tried and convicted on the charge of keeping a house of ill fame. The indictment containing this charge against her was returned on Oct. 17th, 1894, and the case was tried at the February term of the court of common pleas in Williams county, for A. D. 1895.

The indictment was in the usual form, and contained the single charge that the defendant, on and between certain different dates named in the indictment, in Williams county, Ohio, "did keep a certain house of ill fame, then and there resorted to for the purpose of prostitution and lewdness, to the common nuisance of all the people of the state of Ohio, then and there lawfully being and abiding."

On the trial of the case the State sought to, and did, over the objection of the defendant's counsel, by permission of the court, prove that the house, (building), referred to in the indictment and owned, occupied and kept by the defendant, was generally reputed in the neighborhood where it was located, to be a place where persons of opposite sex met for the purpose of prostitution.

The court, SNOOK J., in passing on the question of the admissibility of evidence of the general reputation of the place kept by the defendant, held that sec. one (1) of the Act of the General Assembly passed May 18th, 1894, vol. 1, Ohio St. 300, commonly called "the Winn Law," furnished a statutory definition of a house of ill fame. That section one of that act was general in its terms; that the act, in none of its provisions, attempted to limit the application of the provisions of section one to the class of cases referred to in the subsequent sections of the act of which section one forms a part, and furnished a new rule of evidence, applicable to criminal prosecutions, on a charge of keeping a house of ill fame, by which the State might make out a prima facie case, against one on trial so charged by showing the building or place kept by the defendant was generally reputed, in the neighborhood where it was located, to be a place where persons of opposite sex met for the purpose of prostitution. That it was the intention of the legislature, in enacting section one above referred to, to define a house of ill fame, and furnish the rule of evidence given above, must be inferred from the general language used, and also from the absence of any limitation of that language in the section itself or in any subsequent part of the act.

That taken in its ordinary legal acceptation, in the absence of any restrictions on its meaning in the act, and in the absence of any rule of construction requiring its restriction, the language of section one can have no less general application than given it in this case.

That it is within the exercise of the proper and legitimate legislative powers of the General Assembly of this state to change the rules of evidence, or even prescribe new ones, so long as no constitutional right is infringed, is too well established to require citation of authority in its support, and the Winn Law, so-called, does not, as we think, trespass upon any constitutional right of a defendant on trial, charged with keeping a house of ill fame, giving it the meaning, scope and significance as given in this case.

John M. Killitts, pros'g att'y for the State.

Scott & Schrider, for the defendant.